**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 14-cv-03047-REB

CHARLES L. MADDOX, JR.,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

**ORDER REVERSING DISABILITY**
**DECISION AND REMANDING TO COMMISSIONER**

---

**Blackburn, J.**

     The matter before me is plaintiff's **Complaint** [#1],[1] filed January 12, 2014,

seeking review of the Commissioner's decision denying plaintiff's claims for disability

insurance benefits and supplemental security income benefits under Titles II and XVI of

the Social Security Act, 42 U.S.C. § 401, *et seq.*  I have jurisdiction to review the

Commissioner's final decision under 42 U.S.C. § 405(g).  The matter has been fully

briefed, obviating the need for oral argument.  I reverse and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

     Plaintiff alleges that he is disabled as a result of bilateral osteoarthritis of the

hips, obesity, low-average intelligence, and a reading disorder.  After his applications for

disability insurance benefits and supplemental security income benefits were denied,

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

plaintiff requested a hearing before an administrative law judge.  This hearing was held

on July 3, 2013.  At the time of the hearing, plaintiff was 51 years old.  He has a high

school education and past relevant work experience as a construction laborer.  He has

not engaged in substantial gainful activity since May 31, 2013, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to

disability insurance benefits or supplemental security income benefits.  Although the

medical evidence established that plaintiff's impairments were severe, the judge

concluded that the severity of those impairments did not meet or equal any impairment

listed in the social security regulations.  The ALJ found that plaintiff had the residual

functional capacity to perform a reduced range of unskilled light work which did not

involve written instructions.  Although this finding precluded plaintiff's past relevant

work, the judge determined that there were other jobs existing in sufficient numbers in

the national and local economies that he could perform.  He therefore found plaintiff not

disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the

Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his

physical and/or mental impairments preclude him from performing both his previous

work and any other "substantial gainful work which exists in the national economy."  42

U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the

impairments in making a disability determination."  ***Campbell v. Bowen***, 822 F.2d 1518,

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(I)-(v).[2]  *See also Williams v. Bowen* 844 F.2d 748, 750-52

---

[2]  Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

(10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  ***Id.***  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  ***Brown***, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

### III.  LEGAL ANALYSIS

By this appeal, plaintiff argues that the ALJ erred by (1) improperly weighing the medical source opinions of record; (2) discounting plaintiff's subjective reports of pain

and functional limitation; and (3) failing to account properly for plaintiff's moderate difficulties in concentration, persistence, and pace in assessing his residual functional capacity.  Because I find the first of these assignments of error merits reversal, I do not address directly plaintiff's remaining arguments, which may be impacted on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *Gorringe v. Astrue*, 898 F.Supp.2d 1220, 1225 (D. Colo. 2012).

As the ALJ noted, plaintiff suffered from bilateral hip pain for several years prior to his alleged date of onset.  (Tr. 16; *see also* Tr. 287 (noting plaintiff's history of hip pain since 2008).)  X-rays taken in February 2012 showed severe osteoarthritis of the left hip, with bone-on-bone apposition, and moderate to severe osteoarthritis of the right hip.  (Tr. 287.)[3]  Dr. Charles Waldron, an orthopedic surgeon, examined plaintiff in October 2012 and issued the following opinion:

> His exam confirms extremely limited range of motion of the hips.  He has flexion contractures and can barely ambulate with use of ambulatory aids. The severity of his hip disease is such that he is headed for a wheelchair and total disability unless he has surgical replacement of both hips, in which case he would be a fully functioning member of society and able  to work jobs with no limitations.

(Tr. 259.)  He concluded that plaintiff "is currently totally disabled if he cannot find sedentary work but he is disabled for any physical activity and work."  (Tr. 259.)

---

[3] More specifically, the report noted

> [t]he left hip shows severe superior joint space narrowing with bone on bone  apposition. Subchondral cyst  is  evident  in  the lateral rnargin of the femoral head.  There is subchondral scerlosis and prominent osteophytes present around the femoral head.  Moderate to severe degenerative changes of the right hip  are also present with superior joint space narrowing  and prominent rim of osteophytes around the femoral head.

(Tr. 287.)

The ALJ gave this opinion "little weight," finding it inconsistent, *inter alia*, with the opinion of the consultative examiner, Dr. Thurman Hodge. (Tr. 17, 247-251.) Dr. Hodge conducted his examination in April 2012. At that time, plaintiff had only recently stopped working at his heavy, unskilled construction job, and in fact was still looking for work. Indeed, plaintiff himself told Dr. Hodge he could sit for three hours, stand for four hours, and walk for an hour (Tr. 248) and did not use a cane to walk (Tr. 251). However, plaintiff reported that the pain in his hips was getting worse over time and that it hurt to walk. (Tr. 247.) Dr. Hodge noted plaintiff's range of motion in the right hip was "without abnormality on gross examination," but flexion of the left hip was only 100 degrees, due to pain. (Tr. 250.) Moreover, Dr. Hodge did not review any X-rays. (Tr. 251.) Based on his examination, he opined that, in an eight-hour workday, plaintiff could sit without restrictions, stand for four hours, walk for two hours, lift up to 30 pounds, and carry up to 20 pounds "for short distances." (Tr. 251.) The ALJ afforded this opinion "significant weight" (Tr. 16), and coupled with the opinion of the state agency medical consultant (who herself relied principally on Dr. Hodge's report) (***see*** Tr. 59-63), his residual functional capacity assessment reflects that he adopted the limitations suggested therein (***see*** Tr. 14).

Of course, the mere fact that one medical source opinion conflicts with another provides no basis in itself to credit one over another. ***See Gonzales v. Colvin***, 69 F.Supp.3d 1163, 1169 (D. Colo. 2014) ("The fact of such a conflict is what gives rise to the need for the ALJ to weigh the opinions in the first instance."). Instead, the ALJ clearly credited Dr. Hodge's opinion because he found it more consistent with plaintiff's

reported activities.[4]  Because that determination ultimately does not bear scrutiny, however, I reverse.

Throughout his opinion, the ALJ placed significant emphasis on plaintiff's continued ability to exercise despite his alleged impairments, citing repeatedly to the facts that plaintiff was still jogging up to three days a week in 2011 and used an elliptical at the gym through 2012.  He found those activities inconsistent with Dr. Waldron's suggestion that plaintiff could "barely ambulate with the use of ambulatory aids" (Tr. 259), noting that "the ability to perform activity at this level suggests limited need for [a] cane" (Tr. 16).  The ALJ also noted that plaintiff was reported as having a normal gait, without a limp, in May 2011.  (Tr. 16, 235.)[5]

While accurate, these statements evidence no apparent recognition that "[o]steoarthritis is a progressive disease," for which "there is no cure."  Chris Iliades, Everyday Health, Osteoarthritis, *The Stages of Osteoarthritis Progression* (available at http://www.everydayhealth.com/osteoarthritis/stages-of-progression.aspx) (last accessed March 25, 2016).  Plaintiff's capacity for exercise in 2011 and 2012, therefore, may not have been an accurate indicator of his functional abilities by the time of his

---

[4]  The record appears to belie the ALJ's additional conclusion that Dr. Hodge's opinion was consistent with the "objective imaging of plaintiff's hips."  (Tr. 17.)  Dr. Hodge himself did not examine any X-rays (*see* Tr. 251), and Dr. Waldron plainly thought the X-rays supported a much more restrictive level of functionality.  Indeed, it strikes this court as obvious that evidence of bone-on-bone osteoarthritis is consistent with significant physical limitations.  Nevertheless, neither this court's nor the ALJ's lay opinion as to the import of the X-ray findings is adequate to substantiate the disability determination.  ***See McGoffin v. Barnhart***, 288 F.3d 1248, 1252 (10th Cir. 2002) (ALJ may reject medical opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion") (citation and internal quotations marks omitted).

[5]  Nevertheless, the ALJ failed to note the further observation at this appointment that plaintiff "has good and bad days."  (Tr. 235.)

alleged date of onset in mid-2013.  Indeed, at the time of the hearing in July 2013, plaintiff testified that he was no longer exercising at all, and went to the gym only to use the whirlpool.  (Tr. 41-42.)  Similarly, in light of the progressive nature of osteoarthritis, the fact that Dr. Waldron examined plaintiff six months after Dr. Hodge should have been acknowledged and addressed.  Thus, the ALJ's unexplored reliance on potentially stale evidence makes the ultimate disability determination suspect.[6]

Equally important as those factors on which the ALJ expressly relied in weighing the medical opinions are those matters which he appears *not* to have considered.  For example, the ALJ failed to acknowledge that, unlike Dr. Hodge, who has a general family medicine practice, Dr. Waldron is an orthopedic surgeon.  In weighing medical source opinions, an important consideration is whether the source expresses an opinion in his or her area of specialization.  20 C.F.R. § 404.1527(c)(5).  Although the Commissioner rightly points out that the ALJ need not address expressly every factor that may bear on the weight to be afforded a medical source opinion, *see Mestas v. Astrue*, 2010 WL 3604395 at *3 (D. Colo. Sept. 7, 2010), because the ALJ did not even mention that Dr. Waldron was a specialist, I cannot conclude that he fulfilled his duty to at least consider that factor, *see Barnhill v. Colvin*, 2014 WL 788042 at *4 (D. Colo. Feb. 27, 2014) (ALJ's suggestion that all factors considered only sufficient if record suggests no reason for dispute), *aff'd*, 607 Fed. Appx. 811 (10th Cir. April 23,  2015).

Most glaringly, the ALJ failed to even mention, much less weigh, the medical opinion of Dr. William Deverell.  Dr. Deverell, also an orthopedic surgeon, examined

---

[6] Although the Commissioner suggests this error was harmless because plaintiff's 2012 X-rays evidenced no appreciable deterioration from X-rays taken a year earlier (see Tr. 213), neither the Commissioner nor this court are capable of to making such a medical determination on their own.

plaintiff in February 2013, making his opinion the closest in time to plaintiff's alleged date of onset.  At that time, plaintiff had "a markedly antalgic or painful gait," with flexion to about 80 degrees on the left and 90 degrees on the right, with no internal and external rotation on either side.  Dr. Deverell also reviewed plaintiff's X-rays, which showed "severe superior joint space narrowing with bone-on-bone appearance."  He concluded that plaintiff required a total joint replacement.  (Tr. 328.)

The Commissioner's regulations require the ALJ to consider every medical opinion of record.  20 C.F.R. § 404.1527(c).  ***See also Hamlin v. Barnhart***, 365 F.3d 1208, 1215 (10th Cir. 2004).  The legal error in failing to acknowledge or address Dr. Deverell's report thus constitutes error *per se.*  ***Thompson***, 987 F.2d  at 1487.  The Commissioner's argument that any error in this regard was harmless is not well taken. Although Dr. Deverell did not endorse any particular restrictions, at the very least, his opinion was consistent with that of Dr. Waldron, and thus might have bolstered the weight appropriately afforded that opinion.  Under those circumstances, the ALJ may well have been bound to recontact either Dr. Waldron or Dr. Deverell, or both, for further expatiation of their opinions as to plaintiff's current functional abilities.  ***See*** 20 C.F.R. §§ 404.1512(d) & 416.912(d); **Social Security Ruling** 96-5p, 1996 WL 374183 at *6 (SSA July 2, 1996).

In light of these considerations, the apparent consistency between Dr. Hodge's opinion and those of a physical therapist, James C. Rennell (Tr. 210-212) and the state agency medical consultant, Dr. Virginia Thommen (Tr.56-65, 66-75, 256), does not make the ALJ's assessment of the weight to be afforded Dr. Hodge's opinion any more persuasive.  These opinions are eighteen and ten months removed, respectively, from plaintiff's alleged date of onset, and thus suffer from the same potential staleness as Dr.

Hodge's opinion.  Moreover, as the ALJ himself noted, Mr. Rennell was not an acceptable medical source (Tr. 17), and Dr. Thommen only reviewed medical records. Both of these sources' opinions, therefore, presumptively were entitled to less weight than those of an examining source such as Drs. Waldron, Deverell, and Hodge.  *See* 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5).

Had these considerations been properly applied, the ALJ's evaluation of the credibility of plaintiff's complaints might have been enhanced, perhaps markedly. **Social Security Ruling** 85-15, 1985 WL 56857 at *6 (SSA 1985).  ***See also Chapo v. Astrue***, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012); ***Cira v. Colvin***, 67 F.Supp.3d 1206, 1209 (D. Colo. 2014).[7]  Accordingly, remand is required.  Although plaintiff requests a directed award of benefits, I find that this case does not present a proper occasion for the exercise of my discretion in that regard.[8]  ***See Nielson v. Sullivan***, 992 F.2d 1118, 1122 (10th Cir. 1993).

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is reversed;

2.  That this case is remanded to the ALJ, who is directed to

   a.  Reevaluate all medical opinions of record in light of the considerations set forth in this opinion, as well as any others that may be relevant to the weight to be assigned to each;

---

[7]  Although I do not address plaintiff's argument that the ALJ further erred by failing adequately to accounts for his moderate deficits in concentration, persistence, and pace in formulating his residual functional capacity, these matters may be addressed on remand as well.

[8]  By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

b.  Recontact any medical or other source, seek the testimony of additional medical or vocational experts, order further consultative examinations, or otherwise further develop the record as he deems necessary;

c.  Reassess his determinations at steps four and five of the sequential evaluation in light of the record as developed on remand; and

d.  Reassess the disability determination; and

3.  That plaintiff is awarded his costs, to be taxed by the clerk of the court in the time and manner provided in Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).

Dated March 29, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge